**APPEAL NO. 11-8099**
**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| KEVIN L. KOESSEL, | ) |
| | ) |
| Plaintiff/Appellant, | ) |
| | ) |
| vs. | ) |
| | ) |
| SUBLETTE COUNTY SHERIFF'S | ) |
| DEPARTMENT, ET AL., | ) |
| | ) |
| Defendants/Appellees. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF WYOMING, HON. NANCY D. FREUDENTHAL, PRESIDING
Case No.  11-CV-0058-NDF

_____

**BRIEF OF PLAINTIFF-APPELLANT**
_____

Stephen H. Kline
Kline Law Office, P.C.
401 West 19th Street, Ste. 306
P.O. Box 1938
Cheyenne, WY  82003
(307) 778-7056
(307) 635-8106 (fax)



ATTORNEY FOR PLAINTIFF-APPELLANT

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

TABLE OF CASES AND AUTHORITIES ............................................................. ii

PRIOR OR RELATED APPEALS ..................................................................... iv

GLOSSARY ............................................................................................. v

STATEMENT OF JURISDICTION ................................................................. 1

    A.   Jurisdiction of the District Court for the District of Wyoming ........................ 1

    B.   Appellate Jurisdiction ..................................................................... 1

STATEMENT OF THE ISSUES ..................................................................... 1

STATEMENT OF THE CASE ........................................................................ 2

STATEMENT OF FACTS ............................................................................. 3

STATEMENT OF THE STANDARD OF REVIEW .............................................. 13

SUMMARY OF ARGUMENT ....................................................................... 14

ARGUMENT ........................................................................................... 14

    A.   ADA Claim ................................................................................. 14

    B.   Breach of Contract ....................................................................... 21

    C.   Procedural and Substantive Due Process Claims Under 42 U.S.C. §1983 ...... 24

        i.   Procedural Due Process ............................................................. 24

        ii.   Substantive Due Process ........................................................... 29

CONCLUSION ......................................................................................... 30

STATEMENT CONCERNING ORAL ARGUMENT ............................................ 31

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................................... 31

CERTIFICATE OF SERVICE ....................................................................... 32

## <u>TABLE OF CASES AND AUTHORITIES</u>

<u>CASES</u>

*Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.,* 936 F.2d 483, 490 (10th Cir. 1991) ........................................................................................ 29

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 747 (1998) ............................ 13

*Butler v. City of Prairie Village Kansas,* 172 F.3d 736, 747 n. 5 (10th Cir. 1999) .......... 16

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)....................... 24, 27

*Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1378 (10th Cir. 1994).............................. 13

*Davis v. U.S. Postal Service*, 142 F.3d 1334, 1339 (10th Cir. 1998) ................................ 13

*E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1037 (2011) ............................................ 15

*Gillihan v. Schillinger,* 872 F. 2d 935, 939-940 (10th Cir. 1989)..................................... 28

*Justice v. Crown Cork & Seal Co., Inc.,* 527 F.3d 1080, 1086 (10th Cir. 2008) .............. 15

*Keating v. Nebraska Public Power District,* 562 F.3d 923 (8th Cir. 2009) ...................... 28

*Kidd v. Taos Ski Valley*, 88 F.3d 848, 851 (10th Cir. 1996) ............................................. 13

*Kinstler v. RTB South Greeley LTD. L.L.C.,* 160 P.3d 1125 (Wyo. 2007) ....................... 24

*Lentsch v. Marshall,* 741 F.2d 301, 305-06 (10th Cir. 1984)..................................... 25, 27

*Lucero v. Matthews,* 901 P.2d 1115 (1995).................................................... 21, 22, 24, 25

*McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973).............................................. 16

*Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 704 (Wyo. 1985)............................ 21

*Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 n. 3 (10th Cir. 1997)…………………………16

*Potts v. Davis County,* 551 F.3d 1188, 1193 n.1 (10th Cir. 2009).................................... 29

*Riggins v. Goodman,* 572 F.3d 1101 (10th Cir. 2009) ......................................... 25, 26, 27

*Sanchez v. Life Care Centers of America, Inc.,* 855 P.2d 1256 (Wyo.1993) .................... 21

*Seegmiller v. Laverkin City,* 528 F.3d 762, 767 (10th Cir. 2008) .................................... 29

*Sheaffer v. State ex rel. University of Wyoming,* 202 P.3d 1030, 1043 (Wyo.2009)........22

*Snyder v. City of Topeka,* 884 F.Supp.1504, 1512-513 (D. Kan. 1995)............................ 28

*Stears v. Sheridan County Memorial Hospital Board of Trustees,* 491 F.3d 1160, 1162

   (10th Cir. 2007)................................................................................................... 13

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 450 (1999) ...................................... 16

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)………………………………..13

*Williams v. Collins Communications, Inc.,* 720 P.2d 880 (Wyo. 1986)............................ 24

*Zinernon v. Burch,* 494 U.S. 113,132 (1990) .................................................................... 28

Statutes

W.S. §18-3-611.......................................................................... 1, 3, 14, 21, 22, 23, 24, 29

Other Authorities

28 U.S.C. §1291 ..................................................................................................................... 1

28 U.S.C. § 1331 ................................................................................................................... 1

28 U.S.C. § 1343 ................................................................................................................... 1

28 U.S.C. § 1367 ................................................................................................................... 1

42 U.S.C. §1981(a).............................................................................................................. 1

42 U.S.C. § 1983 ............................................................................................. 1, 2, 3, 14, 24

42 U.S.C. § 1988 ................................................................................................................... 1

42 U.S.C. §§ 12101-12213 .............................................................................................. 1, 2

42 U.S.C. § 12102(2)........................................................................................15

42 U.S.C. §12117(a) ...........................................................................................1

42 U.S.C. §2000e-5(f) (1)...................................................................................1

U.S. CONST. amend. V .......................................................................1, 2, 3, 14

U.S. CONST. amend. XIV ...................................................................1, 2, 3, 14

## PRIOR OR RELATED APPEALS

There are no prior or related appeals pending before this Court.

# **GLOSSARY**

ADA                                         Americans with Disabilities Act

DOT                                         Department of Transportation

POST                                        Wyoming Peace Officer Standards & Training

Appellant Koessel submits this brief regarding the issues raised by him on appeal.

## STATEMENT OF JURISDICTION

A.    <u>Jurisdiction of the District Court for the District of Wyoming</u>

The District Court had original federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.  The action was authorized and instituted pursuant to Section 107 (a) of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117 (a); Title VII of the Civil Rights Act of 1964 (Title VII); 42 U.S.C. §2000e-5(f) (1); Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981(a); 42 U.S.C. § 1983 and 1988 and the Fifth and Fourteenth Amendments to the United States Constitution.

B.    <u>Appellate Jurisdiction</u>

The District Court issued its Judgment on November 17, 2011, dismissing all claims brought by Koessel. (Aplt. App. at 91). Koessel timely filed his Notice of Appeal on November 18, 2011, pursuant to Fed. R. App.  4.  (Aplt. App. at pp. 92-94). This Court has jurisdiction pursuant to 28 U.S.C. §1291 in that the Judgment is an order from the District Court disposing of all claims.

## STATEMENT OF THE ISSUES

1.  Did Koessel present evidence from which a reasonable finder of fact could find that he was terminated in violation of his rights under the Americans with Disabilities Act 42 U.S.C. §§ 12101-12213? (Aplt. App. at pp. 13-16, 19-21, 76-82, 90.)

2.  Did Koessel present evidence from which a reasonable finder of fact could find that his termination breached contractual rights existing pursuant to W.S. §18-3-611 and

Appellees' personnel policies and disciplinary rules? (Aplt. App. at pp. 13-16, 21, 82-87, 90).

3. Did Koessel present evidence from which a reasonable finder of fact could find that he was terminated in violation of his rights to procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983? (Aplt. App. at pp. 13-16, 21-22, 87-90).

## STATEMENT OF THE CASE

Koessel was employed by the Sublette County Sheriff's Department from April 2002 through August 2009. (Aplt. App. at p. 193). In December 2007 Koessel suffered a stroke and was terminated from his employment on August 12, 2009. (Aplt. App. at pp. 119, 133, 199). Charges of employment discrimination on the basis of a disability and perceived disability were filed with the United States Equal Employment Opportunity Commission ("EEOC") through the Wyoming Department of Labor within three hundred (300) days of the commission of the unlawful employment practice alleged on February 1, 2010. A Notification of Right to Sue on the basis of disability and/or perceived disability discrimination charge was received from the EEOC on December 27, 2010. Koessel filed a Complaint with the District Court within ninety (90) days of receipt of the EEOC's Notification of Right to Sue. (Aplt. App. at pp. 12-23).

The Complaint filed is a wrongful termination action involving four claims for relief. The Complaint alleges three federal claims. Those claims assert that Koessel was terminated in violation of his rights under the Americans with Disabilities Act 42 U.S.C. §§ 12101-12213 and his rights to Substantive and Procedural Due Process under 42

2

U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution. The Complaint also alleges a state law breach of contract claim pursuant to Wyoming Statute §18-3-611 and the policy and disciplinary rules of the Sublette County Sheriff's Department.

Prior to trial, Appellees filed motions for summary judgment on all claims. On November 15, 2011, the District Court entered a Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment on all claims. (Aplt. App. at pp. 69-90). Judgment was entered on November 17, 2011, dismissing all of Koessel's claims, and this appeal was timely filed on November 18, 2011. (Aplt. App. at p. 91, pp. 92-94). The subject matter of this appeal is the dismissal of all of Koessel's claims.

## STATEMENT OF FACTS

The material facts which govern this case are generally not in dispute. The facts when viewed in a light most favorable to Koessel are as follows:

Koessel was employed by the Sublette County Sheriff's Department (Sheriff's Department) from April 2002 through August 2009. (Aplt. App. at p. 193). Bardin testified that at all times he was a very good employee who was dedicated to the department and his job. (Aplt. App. at p. 233). In December 2007 Koessel suffered a stroke. Following his stroke, Koessel quit smoking and began an exercise regime. It is uncontested that by August of 2009 Koessel was in much better shape than he was prior to the stroke other than the fact that he suffers from a partially paralyzed bladder and has to catheterize himself daily to fully empty his bladder. (Aplt. App. at pp. 119-125). The

fact that he has a partially paralyzed bladder has not been mentioned by any witness as a factor in his termination.

Koessel was cleared to return to work part time in early April 2008, and he was put back to work at a desk job approving reports and doing VIN checks. (Aplt. App. at pp. 200-201, 239).   In August 2008 he was released to return to work by his internist in Rock Springs, Wyoming, Terry Donaldson M.D. for full-time duty with the only restriction that he could only work 40 hours per week. (Aplt. App. at pp. 115, 197, 240). During this period of time Koessel suffered from some fatigue and lightheadedness, but those problems did not prevent him from working a regular shift. (Aplt. App. at pp. 206-207).  Koessel's blood pressure was regularly 120 over 80 and consistently much lower than it was before the stroke. (Aplt. App. at p. 203).

 Upon his release to return to work, Bardin and the County Commissioners never sought information about Koessel's blood pressure levels or general physical condition. (Aplt. App. at pp. 255-256).  In fact, Bardin testified during the time in which he was Sheriff that the Department had virtually no standards with respect to the physical fitness of its officers and that high blood pressure would not disqualify anyone from being employed as a deputy as long as he had a doctor's release.  (Aplt. App. at pp. 266-268). During his administration, Bardin admitted that no one other than Koessel was ever disqualified for any reason because of a physical examination. (Aplt. App. at pp. 255, 266-268).

Bardin testified that he had no concerns about Koessel returning to patrol once he received his release to return to work.  (Aplt. App. at pp. 243-244, 246).  Nonetheless, the

very next day following Koessel's release to return to full time work, his job as a patrol sergeant was given to another officer. (Aplt. App. at pp. 217, 243-245, 251). Koessel was instead returned to work with his primary duties being the performing the same tasks of approving reports and VIN checks he was doing since April 2008. (Aplt. App. at p. 248).

Following his release to go back to work full time, Koessel worked out of the Sheriff's Department office in Pinedale which is over 40 miles from Koessel's home in Big Piney. He traveled over 80 miles to and from his home every work day in a Sublette County vehicle. (Aplt. App. at pp. 200-201, 218). Bardin initially informed Koessel that he could make traffic stops on his way to and from work. (Aplt. App. at pp. 201, 218, 251). Between August 2008 and November 2008 Koessel made approximately 35 traffic stops. (Aplt. App. at p. 218). No member of the public ever made a complaint about the way that Koessel handled those traffic stops or his interactions with the public. (Aplt. App. at pp. 249-250). No employee of the Sheriff's Department ever made a complaint to or raised a concern with Koessel about how he handled those traffic stops or any other part of his job duties. (Aplt. App. at p. 218). No written documentation exists of any issues related to Koessel's work performance during this period of time.

Unbeknownst to Koessel, one of the captains in the Sheriff's Department, Mike Peterson, whose wife was an assistant county attorney in Sublette County, approached Bardin at some point and apparently told him that Koessel created safety issues for the County. (Aplt. App. at pp. 247-250). Defendants contend that Captain Peterson initially voiced a concern to Bardin about Koessel's ability to handle his job in the fall of 2008 after listening to Koessel on the radio during traffic stops. Captain Peterson and one

other officer also allegedly told Bardin at some point that they had additional concerns because Koessel lost his temper on one unspecified occasion and left work on another unspecified occasion because of a spike in his blood pressure.  (Aplt. App. at pp. 253-255).  The record does not contain sworn testimony from Captain Peterson or any other officer of concerns about Koessel's handling of any part of his job but rather only Sheriff's Bardin's hearsay understanding that unspecified vague concerns existed.

Bardin never witnessed Koessel lose his temper or otherwise act inappropriately. (Aplt. App. at pp. 255, 259). No tapes of the traffic stops have ever been produced, and Bardin does not remember the specifics of any of the alleged concerns of Captain Peterson regarding how the stops were handled. (Aplt. App. at p. 247).  The Defendants have provided no direct testimony about the incident in which Koessel supposedly lost his temper, the incident in which he left work because of his blood pressure, or the traffic stops that allegedly were a problem.[1]

In November 2009, Bardin told Koessel that he could no longer make traffic stops and could only assist traffic stops with backup. (Aplt. App. at pp. 248, 251-252). Bardin acknowledges that he did not discuss the reasons for this with Koessel.  From November 2008 through April 2009, Koessel performed VIN checks, approved reports and assisted with backup on traffic stops.  No one approached him with any issues concerning how he performed these functions. (Aplt. App. at p. 258).

---

[1] The only time that Koessel left work early occurred in January 2009, eight months before he was terminated.  That occurred because of the side effect of a backup blood pressure medication that he took which made him drowsy rather than because of elevated blood pressure.  (Aplt. App. at p. 204).

On April 2, 2009, Bardin placed Mr. Kossel on administrative leave and gave him a copy of a letter authored by the County Commissioners dated March 16, 2009. (Aplt. App. at p. 116).   That letter indicated that Bardin had approached the County Commissioners with concerns about Koessel's ability to safely handle his job as an officer and that the Commissioners recommended that he be sent for a medical evaluation because of the safety concerns of the Sheriff.  On April 14, 2009, Koessel was sent to see Gerald Moress M.D., a neurologist in Salt Lake City, for an independent medical examination. (Aplt. App. at pp. 117-118, 119-125, 262).

Prior to Koessel's visit to Dr. Moress, Dr. Moress received an introductory letter from Bardin in which Bardin asserted that the Department and the County were concerned about Koessel because he suffered from frustration, dizziness and high blood pressure and left work on a number of occasions as a result.  The letter also expressed the fact that Koessel had significant memory lapses.  Finally, Bardin informed Dr. Moress of the fact that Koessel had to catheterize himself daily. (Aplt. App. at pp. 117-118).

This letter was never shared with Koessel by Bardin.  In fact, Koessel had never left work as a result of dizziness or frustration and only left work on one occasion in January 2009 as a result of having taken a blood pressure pill that had side effect of making him sleepy. (Aplt. App. at p. 204).  As Dr. Moress' testing confirmed, Koessel did not suffer from memory problems. (Aplt. App. at pp. 119-125).

Following his examination and testing of Koessel, Dr. Moress wrote a report to Bardin.  (Aplt. App. at pp. 119-125).  Dr. Moress stated in his report that he found no medical reason that Koessel could not return to his job duties.  Dr. Moress found that

Koessel's hypertension and hyperlipidemia were under control and that as a result, "(t)he risk for additional cerebrovascular events would be minimal." He also could not find that Koessel suffered from any cognitive deficits. Dr. Moress' report states in part, "Strictly from a neurological standpoint he would be able to work, but there are potential problems to cognitive functioning that may have resulted from the stroke and should be investigated." Apparently due to the concerns expressed in Bardin's letter, Dr. Moress suggested that additional testing by a neuropsychologist might be appropriate. (Aplt. App. at pp. 124-125).

Bardin and the County Commissioners subsequently sent Koessel to see a psychologist in Jackson, Wyoming named Michael Enright. The Department has utilized Dr. Enright exclusively over the past ten years for psychological testing of new hires. (Aplt. App. at p. 282). Dr. Enright's qualifications do not appear in the record, but Bardin acknowledges that Dr. Enright is a psychologist and was not qualified to perform a physical on Koessel. Dr. Enright gave Koessel the same battery of psychological tests that he had given to Koessel when he was first hired with Sublette County. Dr. Enright's report indicates that the pre-employment psychological testing "found no factors that would prohibit his involvement with law enforcement" and that the testing done in April 2009 found "no clinical indicators and no changes from the previous administration of the MMPI."[2] Koessel's thought processes appeared rational, and he displayed no

---

[2] Bardin had no idea how Koessel's psychological testing in 2009 compared to that done in 2002. (Aplt. App. at p. 268).

"difficulties with frustration or stress at any time during the testing or interview".  (Aplt. App. at pp. 126-132).

Despite the fact that he had no objective testing to support any claim of disability from work on the part of Koessel, Dr. Enright found that Koessel's current symptoms "may" interfere with Koessel's ability to function as a law enforcement officer.  His findings of symptoms again appear to be based upon those matters set out in Bardin's introductory letter.  It was Dr. Enright's recommendation that Koessel continue to be employed in a position of "low stress" with the Sheriff's Department and that a follow up evaluation be done in December 2009 or January 2010.  (Aplt. App. at pp. 126-132).

Following the evaluation by Dr. Enright, Koessel was not allowed to return to patrol work or even to return to work approving reports and checking VIN numbers. (Aplt. App. at pp. 133, 210).  For a short period of time in May 2009 he was allowed to work as an assistant in the Emergency Management office for Sublette County which is operated through the Sheriff's Office. (Aplt. App. at p. 270).  That ended when Bardin told Koessel that the funding for a position through the Emergency Management Office had been pulled by the County Commissioners. (Aplt. App. at 222-223).  The County Commissioners deny that any funding for any position within the Sheriff's Department was in fact ever terminated.

While on administrative leave, during the late spring and early summer of 2009, Koessel had at least three conversations with Bardin in which Bardin indicated that he was considering his options as far as placing Koessel in a "low stress" position.  Bardin in those conversations variously mentioned positions as a detention officer, an evidence

9

custodian, or as a school resource officer as possibilities. (Aplt. App. at p. 264, pp. 271-276).  Koessel told Bardin that he felt that he could return to work as a patrol sergeant, but Bardin told Koessel that was not going to happen. (Aplt. App. at pp. 213-214). Koessel was never informed that further information from his own physician was needed to put him back to work.  (Aplt. App. at p. 279). Bardin had no discussions with Koessel about being terminated although he was encouraged to seek long term disability. (Aplt. App. at p. 279).

In his deposition, Bardin testified that a decision was made to terminate Koessel based upon the report of Dr. Enright.  He testified that the reason that Koessel was not allowed to return to work in any capacity was because if Koessel remained as a deputy in any capacity, he would have had access to a county vehicle. (Aplt. App. at pp. 276-278). After discussing the matter with the County Attorney's office in the summer of 2009, Appellees jointly concurred that they would face liability issues if Koessel was allowed to drive a county vehicle.  Appellees decided Koessel would never be allowed to drive a county vehicle and he would be terminated.  (Aplt. App. at pp. 276-281).  Koessel was never informed of these discussions.

It is uncontested that during the entire year and four months following Koessel's release by his physician to return to work, he regularly drove a Sheriff's Department vehicle without incident and that Dr. Donaldson, Dr. Moress and Dr. Enright placed no restrictions on his driving. (Aplt. App. at pp. 115, 119-125, 126-132, 277).   It is also uncontested that neither the Commissioners nor Dr. Enright ever told Koessel that his driving of a county vehicle was an issue. (Aplt. App. at pp. 126-132, 279-280).  In fact,

no one ever told Koessel why he was placed on administrative leave other than that he was a liability risk. He was never given an opportunity to seek a second opinion with respect to the concern about his driving or any other concerns that the Commissioners or Bardin had. (Aplt. App. at pp. 279-280). Up to the day of his termination, Koessel understood from Bardin that he would remain on administrative leave or be placed in a low stress position with the Sheriff's Department until the end of the year at which time he would be reevaluated by Dr. Enright. (Aplt. App. at p. 213). Bardin admitted that Koessel was not informed before receiving his termination letter that he was going to be terminated. (Aplt. App. at pp. 279-280).

On August 12, 2009, Bardin gave Koessel a letter signed by him terminating his employment. That letter references Dr. Enright's report and indicates that the report finds Koessel "not physically fit to perform the duties of a Sublette County Deputy Sheriff" without referencing any specific reason that Koessel is unfit for duty. It states that there are no jobs available within the Sheriff's Department that Koessel is medically cleared to perform and concludes that based upon Dr. Enright's report "this office has no alternative but to discharge you from duty." (Aplt. App. at pp. 133-140, 211). Amazingly, Defendants now contend that this letter did not constitute a final determination by Bardin that he was going to terminate Koessel.

The letter did inform Koessel that he had the right to seek a hearing with respect to his termination and provided him with a copy of the rules in that regard. Pursuant to the disciplinary rules of the Sheriff's Department, the hearing would be held before a panel of three individuals whose only authority was to make a recommendation to Bardin

regarding whether Koessel's termination was warranted. (Aplt. App. at pp. 133-140). Koessel chose not to pursue that hearing because Bardin had already determined that there were no jobs available at the Sheriff's Department which he could perform, and Koessel did not understand how a panel of individuals could overrule the Sheriff's decision that no such jobs existed. (Aplt. App. at pp. 211-212). Moreover, since Koessel was never told the reason for his termination and had two medical opinions that he could perform his job, he had no idea what issues to contest. (Aplt. App. at pp. 211, 276-278).

Bardin testified that if Koessel had asked for a hearing, regardless of the recommendation of the panel, the only condition under which Bardin would have allowed Koessel to return to his job was if Dr. Enright gave his outright approval to Koessel's return to work.  (Aplt. App. at pp. 283-284).  Bardin does not explain why he would only accept the release if it came from Dr. Enright or why he did not allow Koessel to be retested by Dr. Enright at the end of the year as suggested by Dr. Enright in his report. He does not address the fact that Dr. Enright never found Koessel unfit for duty or that he was unable to safely drive a vehicle.   He does not explain why in Koessel's case he did not accept the release from Dr. Donaldson or why the fact that Dr. Moress found no physical basis to disqualify Koessel from working as a deputy sheriff wasn't sufficient grounds to allow Koessel to return to work. (Aplt. App. at pp. 115, 119-125, 146-149, 241-242).

Following Koessel's termination, the Sheriff's Department informed the entity that certifies peace officers in Wyoming (Peace Officers Standards and Training Commission (POST)) that it had terminated Koessel for medical reasons.  POST investigated the

circumstances surrounding the termination and determined that Koessel was qualified to keep his peace officers certification and was "Fit for Duty". (Aplt. App. at p. 209). Shortly after Koessel was terminated, he passed a DOT physical and was hired by UPS as a driver delivering parcels. (Aplt. App. at 227). For the last two years, Koessel has driven over 80,000 miles without incident.

## STATEMENT OF THE STANDARD OF REVIEW

This Court reviews appeals from the granting of summary judgment *de novo,* construing the record in the light most favorable to Koessel and resolving all inferences in his favor. *Stears v. Sheridan County Memorial Hospital Board of Trustees,* 491 F.3d 1160, 1162 (10th Cir. 2007). Summary judgment should be denied unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1378 (10th Cir. 1994) (citations omitted). When considering a summary judgment motion, the court, "must take the facts alleged by the employee to be true." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 747 (1998) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party." *Kidd v. Taos Ski Valley*, 88 F.3d 848, 851 (10th Cir. 1996). Summary judgment is granted only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position. *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1339 (10th Cir. 1998).

## SUMMARY OF ARGUMENT

Koessel was terminated from his employment with the Sheriff's Department based upon a perceived disability in violation of the ADA. The Sheriff's Department also breached an implied contract of employment with Koessel by terminating him without cause in violation of W.S. §18-3-611 and the written policies and procedures of the Sheriff's Department. Finally, Koessel was denied procedural and substantive due process in violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution. The District Court's grant of summary judgment to the Appellees on the above issues must be reversed as the Court failed to view the facts in the light most favorable to Koessel. The matter should be returned to the District Court for a jury trial so that the trier of fact can determine the issues in dispute.

## ARGUMENT

A.    ADA Claim

There is no dispute that Bardin and the Commissioners regarded Koessel as disabled after his stroke despite the fact that his physician cleared Koessel to return to full time duty in August 2008 and that he worked full time for approximately one year without complaint or incident. Furthermore, there is no dispute that Appellees terminated him from his position as deputy sheriff on the basis of this perceived disability. (Aplt. App. at p. 133). Nevertheless, the District Court concluded that Koessel failed to establish a prima facie case of discrimination because he did not demonstrate that he is qualified to perform the essential functions of the job held or desired. (Aplt. App. at p.

14

82).  In so concluding, the District Court failed to view the evidence in the light most

favorable to Koessel.

 The purpose behind the Americans with Disabilities Act is to provide a "clear

and comprehensive national mandate for the elimination of discrimination against

individuals with disabilities" and "clear, strong, consistent, enforceable standards

addressing discrimination against individuals with disabilities."  *E.E.O.C. v. C.R.*

*England, Inc.,* 644 F.3d 1028, 1037 (2011) (citations omitted).  In enacting the ADA,

Congress determined to prohibit discrimination against not only those with true

disabilities but also those who are only perceived by employers to be disabled.  Thus, the

term disabled is specifically defined to include those who are regarded as having a

disability.  The definition of disabled includes the following:

> (A) a physical or mental impairment that substantially limits one or more
> of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment....

42 U.S.C. § 12102(2).  In order to establish a prima facie case of discrimination, Koessel

must show that: (1) he is a disabled person as defined by the ADA; (2) he is qualified,

with or without reasonable accommodation, to perform the essential functions of the job

held or desired; and (3) he has suffered discrimination by an employer or prospective

employer because of that disability.  *Justice v. Crown Cork & Seal Co., Inc.,* 527 F.3d

1080, 1086 (10th Cir. 2008).  A claim for discrimination based upon being "regarded as"

disabled can be proven in either of two ways:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual....

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 450 (1999).

There is no doubt that Koessel has established that he is a disabled person as defined by the ADA.  Appellees acknowledge that they perceived Koessel to be disabled.  Koessel has also proven the third prong of the prima facie case.  There is direct evidence of discrimination in that Appellees acknowledge terminating him on the basis of a perceived disability.[3]  (Aplt. App. at p. 133).  Yet they do not, and cannot, state what they believe that disability to be or what job functions he is unable to perform.  This case is a classic example of stereotyping that Congress found to be illegal in enacting the ADA.

The only issue identified by the District Court is whether Koessel has proven the second prong of the prima facie case.  The District Court acknowledges that the question of whether an employee can perform the essential functions of his job is a mixed question of law and fact. (Aplt. App. at p. 70). Questions of fact should be resolved by the jury.  Yet the Court concludes that this issue need not go to a jury because Koessel has not demonstrated that he is able to perform the essential functions of his job.  (Aplt. App. at p. 83). This conclusion fail to view the facts in the light most favorable to Koessel.

---

[3] Because there is direct evidence of discrimination on the basis of disability, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 93 S.Ct. 1817 (1973) may be unnecessary and inappropriate. *Butler v. City of Prairie Village Kansas,* 172 F.3d 736, 747 n. 5 (10th Cir. 1999) (citing *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 n. 3 (10th Cir. 1997)).

Koessel has presented more than sufficient evidence supporting his claim that he was able to perform the essential functions of his job.  First, Koessel's physician cleared him to return to full-time duty in August 2008.  (Aplt. App. at pp. 115, 217).  Nonetheless, the following day, his job as a patrol sergeant was given to another officer, but Koessel was allowed to perform traffic stops while driving his patrol vehicle to and from work, a round-trip of over 80 miles.  (Aplt. App. at pp. 218, 251).  Between August 2008 and November 2008, Koessel made approximately 35 traffic stops without complaint.  (Aplt. App. at pp. 218, 249).  No written documentation exists regarding any issues related to Koessel's work performance during this period of time, and there is no evidence in the record regarding any concerns or complaints about Koessel.  Regardless, three months later, without any documentation of a problem with the handling of his work duties, he was prohibited from handling any stops other than as a backup officer.  (Aplt. App. at pp. 248, 251-252).  Five months later, Appellees decided that they would not even allow him to do VIN inspections or proof reports while they sought another medical examination.  (Aplt. App. at p. 116).  Koessel was sent to a neurologist who could find no physical reason that he could not return to work and then sent to a psychologist whose psychological testing showed no issues that were different from the psychological testing that was done when Koessel was first hired.  (Aplt. App. at pp. 119-125, 126-132).

The District Court ignores the fact that he was clearly physically fit for duty by claiming that the issue is not whether he was physically fit for duty but whether he was mentally fit for duty, concluding he is not.  First, this ignores the stated reasons Koessel

was consistently provided for the failure to return him to his job as a patrol sergeant, the continual diminishing of his duties, and his eventual termination, which was that he was "not physically fit to perform the duties required of a Sublette County Sheriff's Officer". (Aplt. App. at p. 133). Second, it ignores the fact that Dr. Enright's test results were the same as the results when Koessel initially tested for his position with the Sheriff's Department eight years previously.[4] Dr. Enright's observations of Koessel indicated that no difficulty with frustration, stress, moodiness, aggressiveness, or judgment.[5] Dr. Enright further stated that Koessel was not "a threat to his own safety or the safety of others." (Aplt. App. at p. 130). Dr. Enright's stated concerns are not founded upon Dr. Enright's observations or Koessel's objective test results but rather appear to be based on a letter from the Sheriff's Department detailing its concerns about Koessel. (Aplt. App. at pp. 117-118). The disparity between the physicians' reports regarding Koessel's ability to perform his job and Dr. Enright's report, as well as Dr. Enright's credibility given the disparity between his tests and observations and his own conclusion, must be resolved in the light most favorable to Koessel at this time and should be presented to a

---

[4] Dr. Enright's report states "The claimant's response to the MMPI-2 generated a valid profile when compared with his profile from an administration during pre-employment in 2002. There are no clinical indicators and no changes from the previous administration of the MMPI-2." (Aplt. App. at p. 129).

[5] Dr. Enright observed: "He applied himself evenly to all the tasks placed before him. He did not demonstrate difficulties with frustration or stress at any time during the testing or interview. He cooperated with the examiner through out the testing and interview. His thought process is rational, logical and within normal limits. His mood was euthymic. His affect is mood congruent. He denied any aggressive impulses either toward himself or others. No psychomotor agitation or retardation was observed. He did not appear to be responding to internal stimuli at any time during the interview and denies experiences of altered perception. No grandiose or paranoid ideation was noted. The claimant's attention and concentration, as measured by his ability to spell the word 'world' forward and backward, is unimpaired. When asked to name the fifteenth letter of the alphabet, he initially said "P," but changed to "0" with a prompt. Of importance is the claimant's overall judgment. When asked what he should do if he were the first person in a crowded theater to see smoke and fire, he stated, "Warn people. Yell out, 'stay calm ... there is a fire ,' and then help people exit through fire exits." (Aplt. App. at pp. 129-130).

jury to determine the weight to give to each person's opinion.

The District Court relies solely on statements made by Dr. Enright, which are in conflict with Dr. Enright's tests and observations, to conclude that Koessel may not be able to perform the essential functions of his job.  Yet Appellees cannot point to a single manner in which Koessel was unable to do his job or how he was disabled.  The District Court ignores the evidence that for a year after being released to go back to work full time, Koessel did his job without being notified of any problem with how he performed it.  Koessel presented evidence that he was physically cleared for duty by two physicians, allowed to maintain his POST certification following an investigation and shortly after his termination passed a physical from the Department of Transportation.    Finally, Koessel presented evidence that the Sheriff's Department had virtually no standards with respect to the physical fitness of its officers and during Bardin's administration, no one other than Koessel was ever disqualified for any reason because of a physical examination.  (Aplt. App. at pp. 115, 119-125, 209, 217-218, 227, 255, 266-269).

Finally, the District Court contends that Koessel never requested a reasonable accommodation.  (Aplt. App. at p. 82).  First, Koessel consistently maintained, based upon his job performance and physician's report, that he was able to perform his job. However, Koessel did request other positions following Appellees' statements that they would not return him to his job as a patrol sergeant.  (Aplt. App. at pp. 264, 271-276). None of the positions ever came to fruition, and in fact, funding for one of the positions was cut by the Commissioners.  (Aplt. App. at pp. 270-271).

The record is replete with evidence that the Appellees acted upon a preconceived notion regarding Koessel's health after his stroke.  In fact, during depositions in this case, Koessel was told <u>for the first time</u> that the reason he was terminated was because Appellees feared liability if he drove a county vehicle.  (Aplt. App. at p. 276).  The record is void of any suggestion that Koessel could not safely operate a vehicle at the time of his termination in August 2009 or do any of the other job functions of a deputy sheriff, and in fact he drove over 80 miles a day in a Sublette County vehicle for a year and four months after returning to work without incident.[6]

Koessel has presented sufficient evidence to show that he was able to perform the essential functions of his job.  Appellees have presented no evidence of what job functions Koessel allegedly could not perform and no evidence of how he presented any greater liability risk than any other officer.  Instead, what the record reflects is that the Appellees had preconceived notions of the long term effects of Koessel's stroke and because of their unsubstantiated fears of liability, they terminated Koessel.  The jury should be allowed to determine the credibility of Dr. Enright's conclusion which was predicated upon a letter from the Sheriff's Department rather than based upon the conclusions of the tests administered.  The record contains sufficient factual issues that the jury, rather than the Court, should have the ability to determine whether Appellees violated the ADA.  The evidence when taken in a light most favorable to Koessel

---

[6] Koessel drove over 80 miles per day to and from work from August 2008 through April 2009 in a county vehicle without incident.  (Aplt. App. at p. 277).  Within two months of being terminated, he passed a DOT physical and was declared fit for duty.  (Aplt. App. at pp. 209, 227).   He was hired as a driver for UPS and presently drives over 40,000 miles a year without incident.  (Aplt. App. at p. 227).

supports a claim that the Appellees misperceived that a nonlimiting or non-existing impairment made it so that Koessel was unable to work with the Sheriff's Department, that Koessel was, in fact, able to perform the essential functions of his job, and that Appellees terminated him on the basis on this perceived disability.

      B.    <u>Breach of Contract</u>

Employees in Wyoming are usually presumed to be "at-will". *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 704 (Wyo. 1985). However, the Wyoming Supreme Court has long recognized that rights existing under statutes or policy manuals can create an exception to the "at-will" doctrine through an implied right of contract. *See Mobil Coal Producing, Inc. v. Parks*, *supra*; *Sanchez v. Life Care Centers of America, Inc.,* 855 P.2d 1256 (Wyo.1993); *Lucero v. Matthews,* 901 P.2d 1115 (1995). In the present case, the facts are undisputed that Koessel had several protections which gave rise to an implied employment contract. First, Koessel was afforded protections pursuant to W.S. §18-3-611, which requires that "[a] deputy sheriff shall not be discharged from employment, reduced in rank or suspended without pay except for cause and after notice and opportunity for a hearing." *See also Lucero v. Matthews,* 901 P.2d at 1120 (statute creates a property right in the position of a full-time deputy sheriff by requiring that any termination of employment be for cause and after notice and opportunity for a hearing). In addition to the rights provided by W.S. §18-3-611, the Sublette County Sheriff's Department had a policy manual entitled Sheriff Department Rules and Regulations dated March 15, 2004. (Aplt. App. at pp. 101-114). This was the policy in effect at the time Koessel was terminated. (Aplt. App. at pp. 233-237).

The District Court agrees that Koessel could only be terminated for cause, but concludes that Koessel cannot succeed on his argument that he was not terminated for cause as required by W.S. §18-3-611. (Aplt. App. at pp. 83, 86).  Cause to terminate a protected public official in Wyoming exists only if there are "facts which are related to the office and affect the administration" of that office which support the employee's termination.  *Lucero v. Mathews*, 901 P.2d at 1122.   However, the District Court concludes that the only thing the Court need consider is whether Appellees acted in good faith in terminating Koessel and further concludes that Appellees did act in good faith. (Aplt. App. at pp. 86-87).  The District Court cites the following as the relevant question to determine whether Appellees acted in good faith:  "Was the factual basis on which the employer concluded [Koessel was not medically cleared to perform the duties required of a Sublette County Deputy Sheriff] reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual?" (Aplt. App. at p. 86) *(citing Sheaffer v. State ex rel. University of Wyoming,* 202 P.3d 1030, 1043 (Wyo.2009)).

In viewing the facts in the light most favorable to Koessel, the evidence supports the conclusion as alleged by Koessel that Appellees did not act in good faith.  Appellees ignored the conclusions of two physicians who found Koessel physically fit to return to work and further ignored the fact that Dr. Enrights' psychological test results were the same as the results from Koessel's examination several years previously when he was hired by the Department.  (Aplt. App. at pp. 115, 119-125, 126-132, 277).   Additionally, Koessel did his job for approximately one year without being notified of any complaints or concerns regarding his job performance.  (Aplt. App. at pp. 217-218, 249-250, 279-

280). The District Court's finding of good faith as a matter of law ignores Appellees' consistent refusal to allow Koessel to his job and reduction of his responsibilities despite no evidence that Koessel was unable to perform his job. Finally, it ignores the testimony that Koessel was ultimately terminated out of concerns about liability while driving a county vehicle despite the fact that Koessel drove a minimum of 80 miles per day for over a year without incident. (Aplt. App. at pp. 276-281). The record reflects significant evidence that the Appellees' reasons were manufactured, were not reached honestly, and were pretextual.

The District Court further determined that a breach of contract claim could not succeed because Appellees did not violate its own policies and procedures. (Aplt. App. at pp. 84-86). This holding again fails to view the facts in the light most favorable to Koessel. Appellees' Rules specifically incorporate the due process rights existing in Koessel as a result of W.S. §18-3-611. Section 4 of the Rules Governing Disciplinary Hearings and existing due process law required notice to Koessel of the specific grounds for his termination. (Aplt. App. at pp. 133-140). While the termination letter notifies Koessel that he is unfit for duty and that allegedly no jobs exist within the Department that he was qualified to handle, it does not notify him as to how he is unfit for duty. Specifically the letter doesn't mention anything about an alleged inability to safely operate a vehicle or any other disability as the specific cause for his termination. (Aplt. App. at p. 133). Accordingly, Koessel was not provided with "a real and meaningful opportunity to respond to *every* charge or allegation that is being brought against him and which will be used as a cause for his termination" as was therefore "deprived of

constitutionally protected property without due process of law." *Lucero v. Mathews*, 901 P.2d at 1121. It is clear that Appellees breached their implied contract with Koessel by failing to provide him with the real reason for his discharge.

Additionally, because the County and the Sheriff's Department breached their contract with Koessel when they terminated him without cause and intentionally hid from him the real reasons for his termination, he had no obligation to proceed with a hearing under the terms of the contract. In Wyoming, once a party has materially breached its contract, it cannot insist on performance by the other party. *Kinstler v. RTB South Greeley LTD. L.L.C.,* 160 P.3d 1125 (Wyo. 2007); *Williams v. Collins Communications, Inc.,* 720 P.2d 880 (Wyo. 1986).

C.    Procedural and Substantive Due Process Claims Under 42 U.S.C. §1983

The procedural and substantive due process claims are brought pursuant to 42 U.S.C. §1983. As such they are brought against the individual Appellees. However, the individual Appellees are named in their official capacities as well since they are the decision makers for Sublette County and the Sheriff's Department.

i.    Procedural Due Process

There is no dispute that Koessel had a protected property interest in his employment pursuant to W.S. §18-3-611, the Policy and Procedure Manual and the Rules Governing Disciplinary Hearings. In all those regards, under the due process clauses of the United States and Wyoming constitutions, he was entitled to notice of the reasons for his termination and an opportunity for a pre-termination hearing before being fired and a post-termination hearing. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985).

24

Notice includes notice of the specific allegations in support of his termination, not just generalizations of inability to work or unfitness for duty. "In order to satisfy the minimum rights of the appellant he must have had adequate, specific notice of those things with which he was being charged. This is a due-process guarantee which allows him to prepare for his hearing." *Lucero v. Matthews*, 901 P.2d at 1121. This jurisdiction has long held that the general notice provided to Koessel is insufficient to meet the requirements of due process because it does not allow an individual the opportunity to rebut each specific allegation against him. *See Lentsch v. Marshall,* 741 F.2d 301, 305-06 (10th Cir. 1984) (plaintiff notified of only one of several reasons for termination did not receive the reasonable notice of the charges against her that due process requires).

Appellees relied heavily below on the case of *Riggins v. Goodman,* 572 F.3d 1101 (10th Cir. 2009) for the proposition that they complied with due process. Riggins was a police officer who suffered a psychiatric event in which he complained that people were after him, his room was bugged and he had a computer chip planted in his brain. Eight months after being placed on medication, he was found fit for duty by a physician. Subsequently a psychiatrist hired by the City cautioned against the resumption of duties of someone taking antipsychotic and antidepressant medication.

The chief of police decided to terminate his employment and sent a letter outlining the reasons for his decision to terminate. Significantly the notice that the Tenth Circuit found compliant with due process in that case bears no resemblance to the notice that was provided to Koessel in this case. The chief outlined five reasons for Riggins' termination including the lack of an unconditional, unqualified medical fitness for duty release, the

adverse and unknown effect of the prescribed medications on Riggins' ability to perform as a police officer, the City's rejection of a therapist's opinion that Riggins was fit for duty based on that therapist's lack of expertise, the police department's inability to create and administer the "carefully planned program" recommended by the psychologist and the fact that none of the doctors knew what caused the delusional episode or what may cause it to reoccur. *Riggins v. Goodman,* 572 F.3d at 1105. After providing this letter, the City provided a three step process following the letter containing notice of the chief's reasons for beginning the termination process. The first step was a face to face meeting with the chief in which Riggins had an opportunity to directly address the chief's concerns and the reasons that he felt he was fit to return to work. The second step allowed an appeal to the City Human Resources Officer, and the third step allowed a subsequent appeal to the City Manager whose decision was binding. This is a process very unlike what was offered to Koessel.

Appellees violated Koessel's procedural due process rights by failing to provide him with sufficient notice of the reasons for his termination. The notice provided to Koessel contained none of the specifics of the reasons for the Appellees' decision, the things that made him unfit for duty or any of the thought processes behind the decision. (Aplt. App. at p. 133). It was insufficient to state that Dr. Enright found him unfit for duty, especially when Dr. Enright's report found no such thing. (Aplt. App. at pp. 126-132). Appellees failed to provide him notice of their concerns about his ability to safely operate a vehicle and any of the other work related job functions that they contended he could not perform and thus failed to provide him with a meaningful opportunity to rebut

the charges.   (Aplt. App. at pp. 133, 276-281).The notice provided to Koessel was far from the detailed notice provided in *Riggins*; rather, the notice is deficient in the same manner as the notice provided in *Lentsch v. Marshall, supra.*

Appellees further violated due process by failing to give Koessel a pre-termination hearing as required by *Loudermill* and discussed in *Riggins*.   Koessel was never provided with the informal pre-termination face to face meeting with Bardin or the County Commissioners.    It is uncontested that at no time did Bardin or the Commissioners sit down with Koessel and inform him of their concerns about his ability to drive or any other specific job functions that they believed that he could not do or give him an opportunity to respond to their concerns.  (Aplt. App. at pp. 279-280).

Appellees contend that the hearing set out in the Rules is in the nature of a pre-termination hearing despite the evidence which makes it clear that the decision to terminate Koessel was made in the summer of 2009 after discussions between Appellees regarding exposure to liability if they continued to employ him. (Aplt. App. at pp. 133, 275-288).[7]  Regardless, whether one believes the pre-termination hearing consisted of the

---

[7] The hearing described in the Rules Governing Disciplinary Hearings is clearly designed to be the more extensive post-termination hearing contemplated by *Loudermill* with the right to conduct discovery, call witnesses, administer oaths, offer exhibits, and proceed through a trial like hearing.  (Aplt. App. at pp. 134-140).  Nonetheless, it fails to provide him the due process protections of a post-termination hearing.   The process offered was unlike that in *Riggins* in that it provided nothing more than the opportunity for a hearing before a panel of three individuals who had no authority to grant Koessel any relief and could only make a recommendation to Bardin, who had already decided to terminate Koessel.   The Sheriff was not required under the Rules to attend the proceedings, listen to or review the evidence or review the findings of the panel.   Bardin testified that a hearing panel would not have changed his mind.   Regardless of what the panel might recommend, he would not have put Koessel back to work without the unconditional approval of Dr. Enright, despite the fact that Dr. Enright's test results were the same as the results that allowed Koessel to begin working at the Sheriff's Department. (Aplt. App. at pp. 283-284).
In fact, in the case of Robert Hanson who was terminated from the Sublette County Sheriff's Department a year after Koessel, a hearing panel was requested by Mr. Hanson under the same Rules.  That panel found unanimously that there was no cause to terminate Mr. Hanson and recommended that he be immediately reinstated.   Bardin rejected the panel's recommendation without being present at the hearing, talking to anyone who participated in the hearing, or reviewing any of the evidence from the hearing. (Aplt. App. at p. 142).  Appellees have not cited to a

initial letter provided to Koessel without an opportunity to meet with a decision maker or the hearing offered after Koessel received his termination letter, either way, Appellees failed to provide meaningful opportunity to respond because they failed to provide their true reasons for terminating Koessel, i.e., concerns about liability issues with respect to driving a county vehicle. (Aplt. App. at pp. 133, 276-281). Accordingly, Koessel had no meaningful opportunity to respond because he did not know the real reasons for his termination. Since no pre-termination process was provided, Koessel was not required to exhaust his post-termination remedies. *Zinernon v. Burch,* 494 U.S. 113,132 (1990); *Keating v. Nebraska Public Power District,* 562 F.3d 923 (8th Cir. 2009).

Furthermore, where, as in this case, a due process deprivation occurs through an official act of Sublette County's policy maker as a result of an established policy, procedure or custom, Koessel had no obligation to further exhaust his administrative remedies. *Gillihan v. Schillinger,* 872 F. 2d 935, 939-940 (10th Cir. 1989); *Snyder v. City of Topeka,* 884 F.Supp.1504, 1512-513 (D. Kan. 1995). Koessel was terminated without the notice required by the pre-termination hearing and had claims for breach of contract and violations of the ADA which did not have a remedy through the petition process. Once a procedural due process violation is established, it is not necessary for a Plaintiff to exhaust his administrative remedies, and nothing within the Rules Regarding Disciplinary Proceedings limited Koessel's right to proceed to federal court.

---

single case in which a hearing which occurs before someone who is not the ultimate decision maker and which fails to require the ultimate decision maker to review the evidence has been found to comply with the post-termination requirements of due process.

ii.  Substantive Due Process

"[S]ubstantive due process … guarantees that the state will not deprive a person of [life, liberty or property] rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.,* 936 F.2d 483, 490 (10th Cir. 1991).  The Tenth Circuit has not yet decided whether an employee with a property right in state-created employment is protected by the substantive due process clause. *Potts v. Davis County,* 551 F.3d 1188, 1193 n.1 (10th Cir. 2009).  Appellees are not entitled to judgment as a matter of law when the law is unsettled as to whether an employee with a property right[8] in state-created employment is protected by the Substantive Due Process clause.

In order to state a claim of substantive due process, Koessel must demonstrate that Appellees' conduct was arbitrary, lacking a rational basis, or an exercise of governmental power that shocks the conscience.  *Seegmiller v. Laverkin City,* 528 F.3d 762, 767 (10th Cir. 2008). The facts viewed in the light most favorable to Koessel are as follows: Koessel was terminated for having a perceived disability in violation of the ADA after doing his job without a single complaint or criticism for over a year after the incident which allegedly caused his disability.  (Aplt. App. at pp. 217-218, 249-250, 279-280).  At the time of Koessel's termination, Appellees had virtually no policy about fitness for duty other than to pass a simple physical which Koessel had done.  (Aplt. App. at pp. 266-268).  Koessel was terminated without being provided the real reason for his termination,

---

[8] There is no question of fact as to whether Koessel has a property right in continued employment.  In fact, Defendants acknowledge that Koessel had a protected property interest in his employment pursuant to W.S. §18-3-611.  As set forth above, Koessel also had a protected property interest pursuant to the Policy and Procedure Manual and the Rules Governing Discipline.

i.e., an unfounded concern regarding liability for driving a county vehicle, and was thus denied the opportunity to refute this allegation.  (Aplt. App. at pp. 133, 276-281).  This unfounded concern arose despite the fact that two physicians and one psychologist examined Koessel, none of whom determined that Koessel should not be driving.  (Aplt. App. at pp. 115, 119-125, 126-132).  Koessel drove a county vehicle 80 miles per day for over a year without incident and is currently employed for UPS as a driver who has driven over 80,000 miles without incident.  (Aplt. App. at pp. 200-201, 218, 227).

The District Court determined that the decision to terminate Koessel was reached honestly, and therefore, any substantive due process right Koessel had was not violated.  (Aplt. App. at p. 89).  This decision is not supported by the evidence when viewed in the light most favorable to Koessel.  The egregious set of facts is more than sufficient to allow a jury to decide whether the Appellees' actions were "shocking" such that a violation of substantive due process occurred.  Certainly, a question of material fact exists with this issue and the trier of fact deserves the opportunity to make a factual determination about whether the facts set forth are conscience shocking.  Appellees are not entitled to summary judgment on this issue.

## CONCLUSION

Koessel acknowledges that Appellee Bardin in his individual capacity should be granted summary judgment with respect to the ADA and breach of contract claim as those claims can only be brought against an employer.  The District Court erred in granting summary judgment to Appellees on all other claims.  This case should be remanded to the District Court so that the case may proceed to a jury trial.

## STATEMENT CONCERNING ORAL ARGUMENT

The factual background of this case and the application of those facts to the federal statutory and constitutional law at issue are complex in nature, and it is appropriate and necessary to have the opportunity to clarify the issues presented.  Therefore, the Appellant requests oral argument and respectfully requests that both sides be given a total of one-half hour.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,164 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 13 size font in Times New Roman.

DATED this 27th day of January, 2012.


/S/ Stephen H. Kline                .
STEPHEN H. KLINE
Kline Law Office, P.C.
Attorney for Appellant
401 West 19th St., Suite 306
P.O. Box 1938
Cheyenne, WY  82003-1938
shk@kline-wyolaw.com
(307) 778-7056
(307) 635-8106 (fax)

## CERTIFICATE OF SERVICE

I, Breanne Ramirez, Paralegal, do hereby certify that on the 27th day of January, 2012 a true and accurate copy of the foregoing BRIEF OF APPELLANT was filed with the Clerk of Court electronically and that the original and 7 copies were hand delivered to:

The Clerk of Court
United States Court of Appeals for the Tenth Circuit
The Byron White U.S. Court House
1823 Stout Street
Denver, CO  80257

on the 30th day of January, 2012.

In addition, I do hereby certify that a true and accurate copy of the foregoing BRIEF OF APPELLANT was served upon all parties to this action via U.S. mail, postage prepaid, on the 30th day of January, 2012.

Richard Rideout
Law Offices of Richard Rideout, P.C.
P.O. Box 389
Cheyenne, Wyoming 82003-0389

Thomas W. Rumpke
Senior Assistant Attorney General
2424 Pioneer Avenue, 2nd Floor
Cheyenne, WY 82002

/S/ BREANNE RAMIREZ               .
BREANNE RAMIREZ, PARALEGAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

|  |  |
|---|---|
| KEVIN L. KOESSEL, | FILED<br>U.S. DISTRICT COURT<br>DISTRICT OF WYOMING<br><br>NOV 15 2011<br><br>Stephan Harris, Clerk<br>Cheyenne |
| Plaintiff, | |
| vs. | Case No. 11-cv-058 |
| SUBLETTE COUNTY SHERIFF'S<br>DEPARTMENT, BOARD OF COUNTY<br>COMMISSIONERS SUBLETTE<br>COUNTY WYOMING, WAYNE M.<br>BARDIN, WILLIAM W. CRAMER,<br>JOHN P. LINN and JOEL E.<br>BOUSMAN, in their individual and<br>official capacities, | |
| Defendants. | |

---

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

This case comes before the Court on Defendants' motions for summary judgment.

Plaintiff Kevin L. Koessel (Koessel) claims Defendants Sublette County Board of

Commissioners (County Board), Sublette County Sheriff's Department (Sheriff's

Department), Sublette County Sheriff Wayne M. Bardin (Sheriff Bardin), and the Sublette

County Commissioners William W. Cramer, John P. Linn and Joel E. Bousman (County Commissioners) (collectively Sublette County), all in their official and individual capacities, violated the Americans with Disabilities Act (ADA), breached Koessel's employment contract, and violated his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution. Generally speaking, Koessel's claims have their genesis in a stroke he suffered which resulted in a demand by Sheriff Bardin for medical and psychological testing, a report recommending placement of Koessel in a low stress position, reassignment, a notice of termination and eventually termination from the Sheriff's Department.

For the reasons discussed below, the Court grants summary judgment in favor of the Defendants.

## Background

From April 2002 through August 12, 2009, Koessel worked as a full-time deputy employed by the Sheriff's Department. Document (Doc.) No. 1, ¶ 13. On December 21, 2007, Koessel was employed as a patrol sergeant. *Id.* He handled that job without complaint or discipline from April 2002 through December 21, 2007. *Id.* On that day Koessel suffered a stroke and was off work until he was cleared to work part time in early April 2008. At that time, he was placed in a desk job approving reports and doing VIN checks. Doc. No. 32-1,

2

p. 38. Koessel also had a partially paralyzed bladder and was required to catheterize daily. *Id.* at p. 28. On August 26, 2008, Koessel was released by his treating physician to return to work full time with no restrictions other than not to work overtime, and Koessel returned to his old position although he primarily did back-up patrol work and desk work. *Id.*; Doc. No. 1, ¶ 15. In the fall of 2008, a Sheriff's Department captain expressed concerns to Sheriff Bardin that Koessel should be a backup officer and not actively doing traffic stops. Doc. No. 32-2, p. 30. Sheriff Bardin also heard complaints from other deputies that Koessel would lose his temper sometimes and would occasionally go home because of blood pressure issues. *Id.* at p. 37. In November 2008, Sheriff Bardin told Koessel that he could no longer make traffic stops and could only assist traffic stops with backup. *Id.* at p. 40.

On April 2, 2009, Koessel was placed on administrative leave following a decision by Sheriff Bardin that Koessel undergo an Independent Medical Examination relating to his fitness for duty. Doc. No. 1, at ¶ 16. In relation to that examination, Sheriff Bardin sent a letter to the examining physician, informing him that Koessel had left work on unspecified occasions due to stressful situations and high blood pressure, and that Koessel had been confrontational at work and suffered memory losses. Doc. No. 32-6. Koessel contests these facts. Doc. No. 1, at ¶ 16.

3

Koessel underwent the medical examination. *Id.* at ¶ 17. The medical examiner's

report found no physical reason why Koessel could not return to work but did identify

potential problems to cognitive functioning that may have resulted from the stroke and

should be identified. *Id.*; Doc. No. 27-1, p. 65. The examining physician recommended

referral to a neuropsychologist for testing. Doc. No. 1, ¶ 17.

Koessel was then sent by Sheriff Bardin to Dr. Enright, a psychologist regularly used

by the Sheriff's Department for psychological testing of new hires. Doc. No. 32-2, p. 84.

Following a series of tests, Dr. Enright prepared a report which stated, in part, "[a]lthough

it is not the opinion of this examiner that the claimant is a threat to his own safety or the

safety of others, he continues to have episodes of emotional disinhibition, episodes of

lightheadedness and at least mild fatigue, all of which are not consistent with full time

activity as a sergeant or patrol officer. Further, there is concern for his judgment should he

be placed in a situation of extreme stress." Doc. No. 25-4. Dr. Enright went on to say that

Koessel's symptoms "may interfere with the following duties" derived from the Sublette

County job descriptions for a Peace Officer and a Sergeant: 1) preserve the peace at public

gatherings, neighborhood disputes and family quarrels; 2) confer with court prosecutors and

testify in court; 3) apprehend a person violating the law or wanted by law enforcement (for

preventive patrol); and 4) ensure that when the law enforcement performance of an officer

4

under his command is unsatisfactory, measures are taken through encouragement, training,

explanation, referral to superior officer, or other means consistent with department policy to

see that the officer's future conduct is up to standard (for Sergeant). *Id.* Dr. Enright

recommended Koessel be kept in a position of low stress. *Id.* Koessel received a copy of Dr.

Enright's report. Doc. 32-2, p. 60.

On May 20, 2009, Koessel returned to work under the supervision of the Emergency

Management Coordinator. Doc. No. 1, ¶ 18. On June 17, 2009, Sheriff Bardin informed

Koessel that his position had not been approved in the County budget,[1] and Koessel was

placed on administrative leave. *Id.* On June 30, 2009, Koessel was encouraged to apply for

medical retirement and/or long term disability although his physician advised Koessel he

could not qualify for either. *Id.* at ¶ 19. On August 12, 2009, Koessel received a notice of

intent to discharge, which stated in relevant part,

> Sublette County Sheriff's Office is in receipt of the report from Dr. Michael Enright,
> dated April 24, 2009, stating, in part, that you are not physically fit to perform the
> duties required of a Sublette County Deputy Sheriff. After careful consideration the
> Sheriff's Department has determined that there are no available positions in the
> Sheriff's Department for which you are medically cleared to perform. For safety
> purposes and to prevent injury to you or the public at large, this office has no
> alternative to discharge you from duty.

---

[1]Sheriff Bardin testified that the Commissioners did not want to create a new position at
Emergency Management because they expected to be in a "no-hire" or perhaps a lay-off
situation. Doc. No. 32-2, pp. 71-72.

*Id.* at ¶ 20; Doc. No. 25-3, p. 2.

The notice also advised Koessel of his right to request a hearing and included the procedures for such a hearing. *Id.* at pp. 2-9. The letter further stated "[f]ailure to submit a written request for a hearing in this matter within five (5) working days from the receipt of this notice will be determined a waiver of your right to a hearing and termination will take place immediately." *Id.* Koessel did not request a hearing, resulting in his termination effective August 21, 2009. Doc. No. 25-1, p. 91; Doc. No. 25-5, p. 2.

After this lawsuit was filed, Sheriff Bardin testified that the reason for termination was, "at that time we didn't have any positions that were low stress or didn't require confronting of the public, so the decision was made to terminate." Doc. No. 32-2, p. 78. When asked why Koessel didn't keep the job of reviewing reports and doing VIN checks, Sheriff Bardin responded, "[o]nce again, he would have been with the public, and he would have had a county vehicle, and we felt that there were liability issues there." *Id.* at 79. Later, Sheriff Bardin said he considered that Koessel would never be able to drive a county vehicle, and therefore he had to terminate Koessel. *Id.* at p. 83.

Koessel was never specifically informed by Sheriff Bardin that driving a county vehicle was a factor in his consideration of termination. *Id.* at p. 83. It is undisputed that, following his release to return to full-time work in August 2008, Koessel was not restricted

6

from driving by any health care provider and he regularly drove a county vehicle without

incident. *Id* at p. 79-81.

## Analysis

Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment is only appropriate if the pleadings and

admissible evidence produced during discovery, together with any affidavits, show that

"there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Western Diversified Services, Inc. v. Hyundai Motor America,*

*Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005).  An issue is "genuine" if there is sufficient

evidence on each side so that a rational trier of fact could resolve the issue either way.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "material" if

under the substantive law it is essential to the proper disposition of the claim.  *Id.*  The non-

moving party is entitled to all reasonable inferences from the factual record, which is viewed

in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, to defeat summary

judgment, a plaintiff must support the claim with more than conjecture and speculation. *Self*

*v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006).  The burden of persuasion rests squarely on

the moving party.  *Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 980 (10th Cir.

2002).

<u>Violation of the ADA</u>

Koessel alleges he was subjected to discrimination by Sublette County on the basis

of a disability or perceived disability, in violation of the ADA.  More specifically, Koessel

complains that Sublette County: 1) refused to allow him to continue his duties as a deputy

sheriff; 2) refused to make other positions available to him; 3) used standards, criteria and

methods that had the effect of discrimination and perpetuating discrimination without

relationship to job functions or business necessity; and 4) refused to allow reasonable

accommodations.  Doc. No. 1, ¶ 28. Sublette County does not contest that Koessel is

disabled, but argues that Koessel cannot demonstrate he is qualified, with or without

reasonable accommodation, to perform the essential functions of the job held or desired.  The

Court agrees with Sublette County.

Koessel begins with the argument that he need not show a prima facie case of

discrimination on the basis of disability because there is direct evidence of discrimination in

that Sublette County acknowledges terminating him on the basis of a perceived disability.

Koessel cites *Butler v. City of Prairie Village Kansas*, 172 F.3d 736 (10th Cir. 1999) for this

proposition.  Koessel's reliance on *Butler* is misplaced.  *Butler* addressed the burden-shifting

8

framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973), and the Tenth Circuit observed, "[i]f the employer admits that the

disability played a prominent part in the decision, or the plaintiff has other direct evidence

of discrimination based on disability, the burden-shifting framework may be unnecessary and

inappropriate." *Butler*, 172 F.3d at 747, n. 5 (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319,

1323 n. 3 (10th Cir.1997)).

However, merely because a case is inappropriate for analysis under the burden-

shifting framework of *McDonnell Douglas*, this does not mean the plaintiff is relieved of

establishing a prima facie case of discrimination under the ADA. *See, Wilkerson v. Shinseki*,

606 F.3d 1256, 1262 (10th Cir. 2010) (analyzing a Rehabilitation Act claim of wrongful

reassignment based on diabetes and obesity, which looks to the ADA for guidance). "[T]he

ADA provide[s] relief only to disabled persons who are 'otherwise qualified' to perform the

functions of the job." *Id.* at 1263, citing 29 U.S.C. § 794(a);[2] *see also*, *Kellogg v. Energy

Safety Services Inc.*, 544 F.3d 1121, 1127 (10th Cir. 2008) (analyzing an ADA claim of

wrongful termination based on epilepsy). Therefore, the Court must begin its analysis with

the issue of whether Koessel has established a prima facie case of disability discrimination

under the ADA.

---

[2] The counterpart provision in the ADA is 42 U.S.C. § 12112(a).

"[I]n order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-1038 (10th Cir. 2011) (citing *Justice v. Crown Cork & Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir.2008)). Further, the plaintiff bears the burden of showing he is able to perform the essential functions of his job. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 400, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).

"Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the work experience of past incumbents in the job; and (6) the current work

experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3)[3]; *see also Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir.2000).

In terms of considering the employer's judgment as to which functions are essential, the Court's inquiry "is not intended to second guess the employer or to require the employer to lower company standards" provided "the description is job-related, uniformly enforced, and consistent with business necessity." *Kellogg*, 544 F.3d at 1127 (citing *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir.2001) and *H. Rep. No.* 101-485(ii), at 55 (1999), reprinted in 1990 U.S.C.C.A.N. 303, 337 (The ADA "does not undermine an employer's ability to choose and maintain qualified workers.")). Further, no court sits "as a 'super personnel department' that second guesses employers' business judgments." *See Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir.1999) (commenting on the court's role in a Title VII case).

The question of whether an employee can perform the essential functions of his job is a mixed question of law and fact. *Rascon v. U.S. West Comm., Inc.*, 143 F.3d 1324, 1333 (10th Cir.1998). However, the Court concludes this case is not one in which the essential function inquiry must go to a jury because Koessel has failed in his burden to show he is able

---

[3]There is no evidence of the terms of a collective bargaining agreement, which is another factor the Court may consider.

11

to perform the essential functions of his job with or without reasonable accommodation. Sublette County provided evidence from a psychologist that Koessel's symptoms "may interfere with the following duties" derived from the Sublette County job descriptions for a Peace Officer and a Sergeant: 1) preserve the peace at public gatherings, neighborhood disputes and family quarrels; 2) confer with court prosecutors and testify in court; 3) apprehend a person violating the law or wanted by law enforcement (for preventive patrol); and 4) ensure that when the law enforcement performance of an officer under his command is unsatisfactory, measures are taken through encouragement, training, explanation, referral to superior officer, [or] other means consistent with department policy to see that the officer's future conduct is up to standard (for Sergeant).

Koessel does not suggest that these peace officer duties are not job-related, uniformly enforced, or consistent with business necessity. Once these criteria have been met, "the employer has the right to establish what a job is and what is required to perform it." *Tate*, 268 F.3d at 993. While Koessel has testimony from his primary physician to the effect that Koessel could handle all the essential job functions, this testimony concerns what Koessel can do physically. Physical ability is not the main issue. The main issue from Dr. Enright's report is the expressed concern for Koessel's judgment should he be placed in a situation of extreme stress. Koessel did not provide any competent evidence questioning or contradicting

12

Dr. Enright's assessment that Koessel's judgment may be affected should he be placed in situations of extreme stress including the situations specifically identified from the job descriptions for Sublette County peace officers. The Court will not require Sublette County to consider an individual qualified for a peace officer's position when there is an undisputed report from a qualified, examining psychologist voicing a concern about a person's judgment under situations of extreme stress which could affect specifically identified essential job functions.

Koessel argues the true reason for termination was not Dr. Enright's report, but Sheriff Bardin's unsupported worry about "liability issues" if Koessel continued to operate a county vehicle. Based on this, Koessel argues he was wrongfully terminated because he was "perceived as disabled." The problem with this argument is that it does not address the elements required for a prima facie case of disability discrimination. The second element of a prima facie case requires Koessel to satisfy his burden to show he is able to perform the essential functions of his job with or without accommodation. Even if this Court were to consider Sheriff Bardin's worries about Koessel operating county vehicles as the Sheriff's only worry and, consequently, the only reason for termination, Koessel still has not shown that he can perform the essential job functions of a Sublette County deputy sheriff with or without reasonable accommodation.

13

Koessel also contends in his Complaint that Sublette County refused reasonable accommodation. While there is no evidence Koessel made an adequate request for accommodation,[4] even assuming he had, an employee's request to be relieved from an essential function of his position is not, as a matter of law, a reasonable or even plausible accommodation. *Wells*, 228 F.3d at 1145; *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1192 (10th Cir.2003) ("the reasonable accommodation requested by [the employee] is to eliminate that essential function, which an employer is not required to do.").

Because Koessel failed in his burden to show he can perform the essential job functions of a Sublette County deputy sheriff with or without reasonable accommodation, he is not a qualified individual with a disability and has failed to establish a prima facie case of disability discrimination under the ADA.

Breach of Contract

Koessel argues he had a contractual right to be terminated only for "cause" under Wyo. Stat. § 18-3-611 which provides, in part, "[a] deputy sheriff shall not be discharged from employment, reduced in rank or suspended without pay except for cause and after

---

[4]Before an employer's duty to provide reasonable accommodations is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice. *C.R. England, Inc.* 644 F.3d at 1049 (citations omitted). The request must "make clear that the employee wants assistance for his or her disability." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir.1999).

notice and opportunity for a hearing. The hearing and any appeal shall be conducted in

accordance with the Wyoming Administrative Procedure Act. The hearing shall be closed

unless both the sheriff and the deputy involved agree otherwise." *Id.*

Sublette County argues Koessel is an at-will employee and the statute does not create

any contractual right nor does it guarantee his continued employment; all it does is give him

the right not to be terminated without cause and an opportunity to challenge the alleged

cause. The Court disagrees with Sublette County's argument.

For an at-will employee, a breach of contract action is not available. *Hoff v. City of*

*Casper-Natrona County Health Dept.*, 33 P.3d 99, 103 (Wyo.2001). However, the Wyoming

Supreme Court has held that Wyo. Stat. § 18-3-611 creates a statutorily and constitutionally

protected property right in the position of a full-time deputy sheriff by requiring that any

termination of employment be for cause and after notice and opportunity for a hearing.

*Lucero v. Mathews,* 901 P.2d 1115, 1120 (Wyo.1995). Though Koessel did not have an

written employment contract with Sublette County, the Court concludes Wyo. Stat. § 18-3-

611 removed Koessel from at-will employment, allowing him only to be terminated for

cause, and thus creates an implied employment contract.

Ordinarily, in implied employment contract cases, a breach of contract is established

by the employer's failure to follow the required procedures, by a showing there was no cause

15

for termination, or by both. *See Lifecare Centers of America, Inc. v. Dexter*, 65 P.3d 385, 391 (Wyo.2003) (discussing this doctrine in a employment handbook context). Koessel argues the intent to terminate notice was inadequate because the law requires Sublette County to provide notice to Koessel of the specific grounds for his termination and the notice did not advise Koessel as to how he was unfit for duty.

Due process and legal principles require "written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Lucero v. Mathews*, 901 P.2d 1115, 1120 (Wyo.1995) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 149584 L.Ed.2d 494 (1985)). "The required notice must afford the public employee 'a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Lucero*, 901 P.2d at 1120 (citing *White v. Board of Trustees, Western Wyoming Community College Dist.*, 648 P.2d 528, 535 (Wyo.1982)).

The notice provided by Sheriff Bardin included the charge that Koessel was not medically cleared for any available positions and, "[f]or safety purposes and to prevent injury to [Koessel] or the public at large," Sheriff Bardin intended to discharge him. Doc. No. 25-3. The notice also explained the employer's evidence, by stating Sheriff Bardin was in receipt of "the report from Dr. Michael Enright, dated April 24, 2009, stating, in part, that [Koessel

16

was] not physically fit to perform the duties required of a Sublette County Deputy Sheriff."

The letter also stated Sheriff Bardin gave careful consideration to available positions within

the Sheriff's Department and could find none for which Koessel was medically cleared.

Based on this, the Court concludes Sublette County provided adequate written notice of the

charges against him including an explanation of the employer's evidence, which together is

constitutionally and legally sufficient for Koessel to meet those charges and to tell his side

of the story, had Koessel chosen to request a pre-termination hearing.

Sheriff Bardin's August 12, 2009 notice also afforded Koessel an opportunity to

request a hearing on the existence of the cause prior to terminating employment. If Koessel

desired to respond to the charges and the employer's evidence contained in the notice, he

could have and should have done so. Koessel argues the hearing process is illusory given

that the hearing is before a panel, not the Sheriff, and the panel merely makes a

recommendation to Sheriff Bardin who can disregard the recommendation. It is well

established that "the right to a hearing does not depend on a demonstration of certain

success." *Loudermill*, 470 U.S. at 544. Further, if Sheriff Bardin were to modify or reject

the panel's findings of fact, conclusions of law and recommendation, he must state his

reasons in writing for taking such action. Doc. No. 25-3, p. 8. Therefore, Koessel was not

17

deprived of his contractual right to a pre-termination hearing to challenge cause for termination.

As to Koessel's claim that he was terminated without cause, this too lacks merit. Applying the "good faith" analysis from *Sheaffer v. State ex rel. University of Wyoming*, 202 P.3d 1030, 1043 (Wyo.2009) (analyzing a breach of contract claim in an implied employment context), the Court concludes Sublette County acted in good faith and the termination did not amount to breach of contract. The important question under this analysis is: "Was the factual basis on which the employer concluded [Koessel was not medically cleared to perform the duties required of a Sublette County Deputy Sheriff] reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual?" *Id.*

Sublette County relied on Dr. Enright's examination report which identified symptoms as reported by Koessel that may interfere with specific essential job duties of a deputy sheriff and which raised concerns with Koessel's judgment should he be placed in a situation of extreme stress. For the same reasons discussed above, there is no basis to dismiss this report as on its face it appears appropriate and thorough and it is the only report in the record addressing questions concerning Koessel's cognitive functions and judgment.

Further, the question isn't whether Koessel will have problems in situations of extreme stress, or whether the notice of intent to discharge was in fact supported by Dr.

18

Ensign's report. Those issues would have been the proper subject of the pre-termination

hearing had that been requested. Rather, the question for this Court is whether Sublette

County acted in good faith in terminating Koessel. On this point, the Court concludes

Sublette County did act in good faith.

Substantive and Procedural Due Process Claims under 42 U.S.C. § 1983

Koessel contends he was entitled to notice and a pre-termination hearing under Wyo.

Stat. § 18-3-611 prior to his termination from employment, and his discharge without such

and without a post-termination hearing, deprived him of substantive and procedural due

process rights guaranteed by the Fifth and Fourteenth Amendments to the United States

Constitution made actionable under 42 U.S.C. § 1983.

In terms of Koessel's procedural due process claim, much of his argument has been

addressed in the Court's discussion on Koessel's breach of contract claim. However,

Koessel also argues that procedural due process affords him the right to a post-termination

hearing. This argument lacks merit. *Loudermill* recognizes Koessel's right to a pre-

termination hearing. "We have described 'the root requirement' of the Due Process Clause

as being 'that an individual be given an opportunity for a hearing before he is deprived of any

significant property interest.'" *Loudermill*, 470 U.S. at 542 (emphasis added, citation

omitted). While the Supreme Court does discuss the possibility that a postdeprivation

19

hearing may satisfy due process requirements in some situations, the entire emphasis of due

process is that any deprivation of a property interest must be preceded by notice and an

opportunity for a hearing ("the only meaningful opportunity to invoke the discretion of the

decisionmaker is likely to be before the termination takes effect"). *Id.* at n. 7 & 543.

Therefore, Koessel's contention that he should have been afforded a right to a post-

termination hearing lacks cogent legal argument. Nonetheless, had Koessel exhausted his

pre-termination hearing procedure, he would have had a right to a post-termination review

of any final termination decision by Sheriff Bardin in that Wyoming law affords an

opportunity for any aggrieved person to seek review of any final agency decision. Wyo. Stat.

§ 16-3-115(a).[5]

___

[5]This provision states:

> Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which the administrative action or inaction was taken, or in which any real property affected by the administrative action or inaction is located, or if no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. The procedure to be followed in the proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court.

Wyo. Stat. § 16-3-115(a). As a county employee, Sheriff Bardin is an "agency" as defined by Wyoming Statute 16-3-101(b)(i).

20

In terms of Koessel's substantive due process claim, this Circuit's precedent has not clearly delineated what specific property interests in employment are fundamental and therefore protected by substantive due process. It has not been "decided whether an employee with a property right in state-created employment is protected by the substantive due process clause." *Potts v. Davis County*, 551 F.3d 1188, 1193 fn 1 (10th Cir. 2009). Assuming Koessel has a protected property interest in continued employment protected by substantive due process, "'[s]ubstantive' due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis." *Id.* at 477. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), *Curtis v. Oklahoma City Public Schools Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998).

As explained above, the decision to terminate Koessel was reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual. Therefore, the Court concludes Sublette County had a rational reason for terminating Plaintiff's employment and any substantive due process right Koessel may have had in continued employment with the Sheriff's Department was not violated.

21

Given the Court's ruling against Koessel on all claims, there is no need to address Koessel's § 1983 "official capacity" claims, or the argument as to whether the County Commissioners are proper parties in this case.

### Order

For all of the above stated reasons, the Court finds that Plaintiff Kevin L. Koessel has failed as a matter of law to demonstrate a genuine issue of material fact as to whether Defendants Sublette County Board of Commissioners, Sublette County Sheriff's Department, Sublette County Sheriff Wayne M. Bardin, and the Sublette County Commissioners William W. Cramer, John P. Linn and Joel E. Bousman, in their official and individual capacities, violated the Americans with Disabilities Act (ADA), breached Koessel's employment contract, or violated his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution. For these reasons it is hereby **ORDERED** that Defendants' Motions for Summary Judgment are **GRANTED** and this case is dismissed with prejudice.

Dated this _14_ day of November, 2011.

NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE

22

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 1 7 2011

Stephan Harris, Clerk
Cheyenna

# United States District Court
### _____ For The District of Wyoming _____

KEVIN L. KOESSEL,

      Plaintiff,

v.                                      Civil No. 11-CV-58-F

SUBLETTE COUNTY SHERIFF'S
DEPARTMENT, BOARD OF COUNTY
COMMISSIONERS SUBLETTE COUNTY
WYOMING, WAYNE M. BARDIN,
WILLIAM W. CRAMER, JOHN P. LINN
and JOEL E. BOUSMAN, in their individual
and official capacities,

      Defendants.

## JUDGMENT IN A CIVIL ACTION

Pursuant to the Memorandum Opinion and Order Granting Defendants' Motions for Summary Judgment entered by the Court on November 15, 2011, the Court ordered that summary judgment be entered on behalf of the Defendants Sublette County Sheriff's Department, Board of County Commissioners of Sublette County Wyoming, Wayne M. Bardin, William W. Cramer, John P. Linn and Joel E. Bousman.  Accordingly, it is therefore:

**ORDERED, ADJUDGED AND DECREED** that the Plaintiff, Kevin L. Koessel take nothing and that Defendants Sublette County Sheriff's Department, Board of County Commissioners of Sublette County Wyoming, Wayne M. Bardin, William W. Cramer, John P. Linn and Joel E. Bousman are entitled to judgment in their favor on all claims asserted against them by Plaintiff.

Dated this 17th day of November, 2011.

_____
_Clerk of Court or Deputy Clerk_